VICENTE SANABRIA Y SU ESPOSA MARÍA HIDALGO, demandantes y recurridos *v.* ANTONIO RIGAU, demandado y recurrente.

*Número:* 109  *Resuelto:* 10 de abril de 1962

*Córdova & González* (*Héctor Martínez Muñiz* en el alegato), abogado del recurrente; *Antonio Figueroa Rivera,* abogado de los recurridos.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Dávila.

PER CURIAM: El dueño de un edificio de apartamientos fue demandado por unos inquilinos con motivo de unas reparaciones que se hicieron en la tubería de aguas negras. Los demandantes ocupaban un apartamiento en el segundo piso.

El sistema sanitario del tercer piso estaba obstruído y fue necesario eliminar la obstrucción que de hecho estaba en la cañería que pasaba por el apartamiento ocupado por los demandantes. La demanda fue declarada con lugar.

Se recurrió ante nos de una sentencia que condena al demandado a pagar $1,255 por concepto de los daños sufridos por uno de sus inquilinos. Mil doscientos dólares fueron concedidos para compensar a la esposa del demandante de una depresión nerviosa sufrida con motivo de que al destapar un tubo de desagüe "brotó a chorros el agua negra, mojando casi todo el piso de la residencia de los demandantes, con un líquido pestilente". Los restantes $55 compensaban al demandante de las pérdidas materiales sufridas. Se condenó al demandante a pagar, además, $250 de honorarios de abogados.

Examinada la evidencia presentada, encontramos que el demandante declara que cuando él llegó a su apartamiento encontró que todo estaba "inundado de aguas negras, escreta humana, cuanta porquería se puede señalar que puede estar detenida en una tubería de aguas negras". Que tuvo que arrollarse los pantalones para poder subir allí. Que la escalera estaba "inundada" de papeles. Y la esposa del demandante manifestó que trató de tirarse por el balcón "al ver tanta porquería que corría detrás de mí y aquellos hombres martillando y viendo tanta escreta y agua sucia y tantos papeles". Y además declara que con motivo de lo que se acaba de relatar, se sintió muy mal del estómago, de los nervios, que estaba muy nerviosa, tenía vómitos y no podía estar tranquila. Cuando se interrogó al perito médico presentado por el demandante para establecer la conexión entre la depresión nerviosa sufrida por la esposa y lo ocurrido en el apartamiento se da por sentado que ha habido una "descarga de materia fecal y de aguas negras pestilentes, putrefactas, papeles". Y entonces manifiesta que "en ciertos tipos de pacientes, en la señora de Sanabria que además de la depresión siempre ha tenido rasgos depresivos, si se presentaba con una situación como la

que sucedió allí, funciona y actúa como un agente desencadenante de la depresión".

Al examinar la sentencia dictada por el juez de instancia, notaremos que no dio por probados los hechos que el demandante y la esposa de éste declaran que acontecieron y que le ocasionaron la depresión y que tampoco existía la base en que se fundó la pregunta al perito, pues se determinó como hecho probado solamente el que del tubo brotó a chorros el agua negra mojando casi todo el piso de la residencia de los demandantes con un líquido pestilente. No hay determinación específica de que brotara materia fecal, papeles, etc., tal como declararon el demandante y su esposa. Y obviamente el juez estuvo correcto en no darle crédito al testimonio del demandante y su esposa, pues las fotografías tomadas al momento de ocurrir los hechos demuestran que sólo brotó agua del tubo obstruído y nada hay en las fotografías que demuestren que brotara material fecal, papeles, etc..

Siendo esta la situación, no se estableció conexión alguna entre la supuesta depresión sufrida por la esposa del demandante y lo ocurrido en el apartamiento, pues la afirmación del perito médico estaba predicada en que se presentara una situación como la que relataron los esposos demandantes y que sirvió de base a la pregunta que se le hizo. Y hemos visto que esa situación no existió. Ahora la prueba sí establece que las aguas que salieron de la tubería ocasionaron daños ascendentes a $55.(1) Manresa comentando al art. 1588 del Código Civil Español, igual al 1444(2) del nuestro, 31 L.P.R.A.

---

(1) El juez de instancia determinó, y esa determinación no fue impugnada, que "los daños sufridos por los demandantes fueron ocasionados por la negligencia del empleado del demandado al no tomar medida alguna de precaución y de cuidado para evitar perjuicios innecesarios...".

(2) Dispone así el art. 1444:

"Si durante el arrendamiento es necesario hacer alguna reparación urgente en la cosa arrendada que no pueda diferirse hasta la conclusión del arriendo, tiene el arrendatario obligación de tolerar la obra, aunque le sea muy molesta, y aunque durante ella se vea privado de una parte de la finca.

sec. 4055.   10 Manresa, Código Civil Español, pág. 551 (ed. 1931) dice así:

"Si a consecuencias de las obras, por falta de cuidado en los que las ejecutan, se causa al arrendatario daño o deterioro en alguno de los objetos de su propiedad que en la casa tenga, justo es, en nuestra opinión, que este daño sea indemnizado.   De manera que, tal como nosotros entendemos el precepto y el silencio del Código sobre la indemnización, estimamos que ésta no procederá por la mera molestia, por la mera privación de parte de la finca que a consecuencia de la obra experimente el propietario, sino por los daños especiales que en las cosas del arrendatario se ocasionen.   La obligación de indemnizar estos daños no hay que buscarla, en rigor, en el art. 1.558, sino en los principios generales de derecho que bastan para producirla."

Independientemente de lo expuesto, de la prueba surge que el demandado, dueño de la casa de apartamientos que ocupaban los esposos demandantes, contrató los servicios de un plomero para localizar y remediar una obstrucción en el sistema sanitario del edificio, todo ello en cumplimiento de su obligación de mantener a los arrendatarios en el goce útil de la cosa arrendada.   Al realizar la obra indicada, ocurrió lo que hemos relatado.   Bajo las circunstancias narradas, los daños reclamados por la depresión causada a la esposa del demandante no eran previsibles.

*Se modifica por tanto la sentencia recurrida reduciéndola a $55 y se elimina el pronunciamiento sobre honorarios de abogado.   Así modificada se confirmará*

---

Si la reparación dura más de cuarenta días, debe disminuirse el precio del arriendo a proporción del tiempo y de la parte de la finca de que el arrendatario se vea privado.

Si la obra es de tal naturaleza que hace inhabitable la parte que el arrendatario y su familia necesitan para su habitación, puede éste rescindir el contrato."